IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| JACK JARRETT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CV 06-1860-MO |
| v. ) | |
| ) | |
| MICHAEL J. ASTRUE, Commissioner of Social ) | OPINION AND ORDER |
| Security, ) | |
| ) | |
| Defendant. ) | |

MOSMAN, J.,

    Plaintiff Jack Jarrett challenges the Commissioner's decision denying his applications for disability insurance benefits and supplemental security income payments under Titles II and XVI of the Social Security Act. I have jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). I AFFIRM the Commissioner's decision.

    The court reviews the Commissioner's decision to ensure that proper legal standards were applied and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g);

1 - OPINION AND ORDER

*Batson v. Comm'r of Soc. Sec. Admin.,* 359 F.3d 1190, 1193 (9th Cir. 2004). The administrative law judge ("ALJ") applied the five-step sequential disability determination process set forth in 20 C.F.R. §§ 404.1520 and 416.920. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Mr. Jarrett argues the ALJ failed to develop the record, improperly rejected the conclusions of his physician, and failed to articulate legally sufficient reasons for discrediting plaintiff's testimony regarding his symptoms. He contends this led to an inaccurate assessment of his residual functional capacity ("RFC"). Mr. Jarrett asserts this undermined the ALJ's conclusion that he retained the ability to perform work in the national economy.

A.  Development of the Record

Mr. Jarrett contends the ALJ failed to develop the record with respect to two impairments. First, he believes the ALJ should have "at a minimum" ordered a consultative psychological examination to establish the nature and severity of his mental impairments.  Pls.' Br. 9. Second, he contends the ALJ should have obtained a consultative medical examination of his lower back to assess his impairments from an L1 compression fracture he suffered in a 1996 work injury. Pls.' Br. 11, 14.

In Social Security disability cases, "the ALJ has a duty to assist in developing the record." *Reed v. Massanari,* 270 F.3d 838, 841 (9th Cir. 2001) (quoting *Armstrong v. Comm'r of Soc. Sec. Admin.,* 160 F.3d 587, 589 (9th Cir. 1998)). Although the ALJ's obligation to assist in developing the record is clearly established, the law is less clear regarding how much evidence a claimant must adduce in order to raise an issue requiring further investigation.

As a starting point, it is clear that the initial burden of proving disability is on the claimant. *Bowen,* 482 U.S. at 146 & n.5; *Burch v. Barnhart,* 400 F.3d 676, 679 (9th Cir. 2005); *see also* 42

U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the [Commissioner] may require."). Under the regulations, it is the claimant's responsibility to provide medical evidence showing that he has an impairment and how severe it is. 20 C.F.R. §§ 404.1512(c), 416.912(c).

> In general, you have to prove to us that you are blind or disabled. Therefore, you must bring to our attention everything that shows that you are blind or disabled. This means that you must furnish medical and other evidence that we can use to reach conclusions about your medical impairment(s), and, if material to the determination of whether you are blind or disabled, its effect on your ability to work on a sustained basis.

*Id.* §§ 404.1512(a), 416.912(a).

The regulations make certain means available to an ALJ to assist in developing the record. For example, with the claimant's permission the ALJ may request reports from physicians identified by the claimant. *Id.* §§ 404.1512(d), 416.919(d). If the information received from the claimant's medical source is not adequate to determine whether the claimant is disabled, the ALJ may recontact the source for clarification or additional evidence. *Id.* §§ 404.1512(e), 416.912(e). The ALJ may order a consultative evaluation if the information available from the claimant's source is inadequate or ambiguous and the source cannot or will not provide clarification. *Id.* §§ 404.1512(f), 416.912(f).

Mr. Jarrett did not provide the ALJ with any medical evidence indicating he had psychological impairments. On his reconsideration disability report, Mr. Jarrett indicated "Dr. Jill Filds diagnosed a chemical imbalance in the brain that if not treated with medication results in severe depression." Admin. R. 126, 133. When the state disability determination agency attempted to obtain these records from Dr. Filds, however, they were told "there are no records available." *Id.* at 172.

3 - OPINION AND ORDER

Consistent with the burden of proof and the regulations summarized above, the ALJ had no duty to develop the record by diagnosing Mr. Jarrett's psychological impairments, if any. *Mayes v. Massanari,* 276 F.3d 453, 459-60 (9th Cir. 2001). The ALJ's duty to conduct an appropriate inquiry is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. *Id.*; *Tonapetyan v. Halter,* 242 F.3d 1144, 1150 (9th Cir. 2001); *Smolen v. Chater,* 80 F.3d 1273, 1288 (9th Cir. 1996). Because Mr. Jarrett failed to produce any medical evidence of mental impairments, there was no ambiguity for the ALJ to resolve.

Nor was the record inadequate to reach a determination. In cases where the claimant fails to produce "medical signs or laboratory findings to substantiate the existence of a medically determinable physical or mental impairment, the individual must be found not disabled." *Ukolov v. Barnhart,* 420 F.3d 1002, 1005 (9th Cir. 2005) (quoting Social Security Ruling 96-4p, 1996 WL 374187 at *1-2). The claimant's statement as to his symptoms is not sufficient. *See* 42 U.S.C. § 423(d)(5)(A) ("There must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities.").

Mr. Jarrett's second argument, that the ALJ failed to develop the record regarding his L1 compression fracture, is also unpersuasive. Mr. Jarrett suffered a work injury on March 1, 1996, after which he was treated for multiple fractures including an L1 compression. Admin. R. 174. He received occupational therapy and rehabilitation services followed by physical therapy. On October 9, 1996, Mr. Jarrett's lumbar range of motion was "minimally restricted in flexion otherwise [within normal limits]." *Id.* at 176. Mr. Jarrett then resumed working without limitation and continued to do so for nearly eight years, until allegedly becoming disabled on July 1, 2004. *Id.* at 58, 65.

On December 29, 2004, Mr. Jarrett underwent a consultative disability determination examination by Raymond Nolan, M.D., Ph.D. Dr. Nolan was told that Mr. Jarrett sought disability "because of problems involving his back neck and right arm." *Id.* at 162. Mr. Jarrett reported daily problems with low back pain, worse with activity. He reported he could sit for up to 45 minutes at a time before he had to change position. He claimed he could walk for one block and stand for 20 to 30 minutes at a time.

Dr. Nolan obtained generally benign findings on physical examination of Mr. Jarrett's lumbar spine, including range of motion tests, Trendelenburg's test for gait abnormality, and axial load test. *Id.* at 162. Based on his interview and examination, Dr. Nolan opined that Mr. Jarrett's functional capabilities were limited to infrequent bending, twisting and turning, occasional lifting and carrying of objects up to 20 pounds, standing or walking for over two hours in an 8-hour day, and sitting for over six hours in an 8-hour day with occasional changes in position for comfort. *Id.* at 163.

Mr. Jarrett did not inform Dr. Nolan of the L1 compression in 1996, although he described other details of his medical history, including the other injuries he suffered in his 1996 work accident. He now argues that the ALJ should have made Dr. Nolan aware of his L1 compression from 1996.

Dr. Nolan examined Mr. Jarrett's lumbar spine thoroughly to evaluate his claim of daily lower back pain. He used accepted clinical methods for measuring function of the lumbar spine. There is no reason to believe these measurements would have produced different results if Dr. Nolan had been aware of the L1 compression in 1996. Moreover, Mr. Jarrett was in the best position to provide Dr. Nolan with his medical history; he cannot reasonably attribute his own failure to do so to error on the part of the ALJ. *See Bowen,* 482 U.S. at 146 n.5 ("It is not unreasonable to require

5 - OPINION AND ORDER

the claimant, who is in a better position to provide information about his own medical condition, to do so.").

The ALJ had no duty to conduct further inquiry into the L1 compression because the evidence was neither ambiguous nor inadequate to allow for proper evaluation. *Mayes,* 276 F.3d at 459-60 ; *Tonapetyan,* 242 F.3d at 1150.

B.   Dr. Nolan's Conclusions

Mr. Jarrett argues that the ALJ erred by failing to give "reasons to reject Dr. Nolan's conclusions regarding a chronic low back pain syndrome condition." Pls.' Br. 13. This argument is frivolous because the ALJ expressly adopted Dr. Nolan's findings: "The undersigned concurs with and adopts the physical limitations shown by Dr. Nolan based on a consultative physical examination on December 29, 2004." Admin. R. 16.

C.   Mr. Jarrett's Credibility

Mr. Jarrett argues the ALJ failed to articulate reasons for discounting the credibility of "plaintiff's testimony regarding low back symptoms, inability to sit for long periods and the need to frequently lay down." Pls.' Br. 13. Mr. Jarrett testified that he has constant pain in the back, neck and right arm, worsened by activity or sitting in a chair for a long time. Admin. R. 248-49. He is able to bend and stoop slowly. *Id.* at 250. He has no current treating physician and does not require pain medication other than Advil. *Id.* at 252. He lies down periodically during the day. *Id.* at 254.

The ALJ considered Mr. Jarrett's testimony in arriving at his RFC assessment. The RFC assessment reflected Mr. Jarrett's asserted limitations in bending, twisting, turning, lifting, and overhead use of the right arm. *Id.* at 16. The ALJ did not accept Mr. Jarrett's assertion of constant pain which imposes limitations in excess of his RFC assessment. *Id.* at 17.

In deciding whether to accept subjective symptom testimony, an ALJ must perform two stages of analysis. The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Smolen*, 80 F.3d at 1281-82; *Cotton v. Bowen*, 799 F.2d 1403, 1407-08 (9th Cir. 1986). The Commissioner agrees that Mr. Jarrett satisfied the first stage. Defs.' Br. 18.

At the second stage of the credibility analysis, an ALJ may discredit a claimant's testimony regarding the severity of symptoms by providing clear and convincing reasons for doing so. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993); *Smolen*, 80 F.3d at 1283. He may consider objective medical evidence and the claimant's treatment history. *Smolen*, 80 F.3d at 1284. The ALJ may also consider the claimant's daily activities, work record, and the observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Id.*; SSR 96-7p, 1996 WL 374186.

Here the ALJ considered proper factors and made specific findings to support his credibility determination. The ALJ reviewed all the objective medical evidence and concluded that Dr. Nolan's clinical findings provided the most reliable measure of Mr. Jarrett's functional capabilities. Admin. R. 16. He observed that Mr. Jarrett had received minimal treatment since the alleged onset of disability, that he was not receiving ongoing treatment and required no medication other than over-the-counter Advil. The ALJ found it significant that Mr. Jarrett reported independently engaging in a wide range of typical activities that were not reasonably consistent with constant debilitating pain.

The ALJ's reasons for partially discrediting Mr. Jarrett's testimony are clear and convincing and rest on reasonable inferences drawn from the record as a whole. His findings are sufficiently specific to permit the court to conclude he did not discredit Mr. Jarrett's testimony arbitrarily.

7 - OPINION AND ORDER

*Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). Accordingly, the ALJ's credibility determination is sustained.

For the foregoing reasons, the ALJ's decision is based on correct legal standards and supported by substantial evidence. The Commissioner's final decision is AFFIRMED.

DATED this  12th  day of   March  , 2008.

        /s/ Michael W. Mosman
        Michael W. Mosman
        United States District Judge